# EXHIBIT "3"

GC
EJ20
McBurney

# INDICTMENT

## FULTON COUNTY SUPERIOR COURT
## STATE OF GEORGIA

STATE OF GEORGIA

vs.

JOY LASKAR,

Defendant.

3485279/14DA13301

INDICTMENT No. 14SC131684
November Term of Court

Count 1: Racketeering O.C.G.A. § 16-14-4(a)
Count 2: Racketeering O.C.G.A. § 16-14-4(b)

Witness for the State:

Melissa Hall

True Bill

This 30 day of December, 2014

Grand Jury Foreperson

FILED IN OFFICE
DEC 30 2014
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**SAM OLENS**
**ATTORNEY GENERAL**

David S. McLaughlin
Senior Assistant Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
(404) 651-5805

**JOY LASKAR** waives a copy of the indictment, list of witnesses, and formal arraignment and pleads ______________.

This the ____ day of ______________, 20___.

______________________________
Defendant

______________________________
Defendant's Attorney

______________________________
Prosecutor

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

**THE GRAND JURORS** selected, chosen and sworn for the County of Fulton, to wit:

1. Terrance Kelly, Foreperson
2. ~~Teresa Morgan, Asst. Foreperson~~
3. Erika Muse, Secretary
4. Mihret Hamda, Asst. Secretary
5. ~~Andrews, Sandra~~
6. Bivens, Heather
7. Bondurant, Melissa
8. ~~Bowman, Chauntayah~~
9. Cagle, Ron
10. Campbell, Josh
11. Colquitt, Horace
12. Hatcher, Danny
13. ~~Krauter, Bridgette~~
14. Little, Vada
15. ~~Mahajan, Sujata~~
16. Mazur, Robert
17. McKinney, Mary
18. Phipps, Ronald
19. Reese, Craig
20. Reid, Jeff
21. ~~Scott, Demiya~~
22. ~~Smith, Deborah~~
23. Waple, Jock
24. ~~Neryenda Mitchell Hall -- A1~~
25. ~~Doyle Tatum -- A2~~
26. ~~Paul Thibodeaux -- A3~~

in the name and behalf of the citizens of Georgia, charge and accuse **JOY LASKAR** with the offense of **RACKETEERING** in violation of **O.C.G.A. § 16-14-4(a)** in that the said accused, in the State of Georgia and County of Fulton, on and between June 27, 2006, and June 24, 2011, did then and there unlawfully, through a pattern of racketeering activity and proceeds derived therefrom, acquire and maintain, directly and indirectly, an interest in and control of an enterprise and personal property, including money, contrary to the laws of said state, the good order, peace, and dignity thereof as follows:

## Background

1.

Between June 27, 2006, and May 17, 2010, **JOY LASKAR** ("the accused") was employed as a Georgia Institute of Technology ("Georgia Tech") professor, to wit, the Georgia Tech Schlumberger Chair in Microelectronics and the Director of the Georgia Electronic Design Center ("GEDC") at Georgia Tech.

2.

During the period of time covered by the indictment, Sayana Wireless, LLC ("Sayana") was the accused's private company; was formed on June 27, 2006, in Delaware as a limited liability company; was registered in Georgia as a foreign limited liability company on August 1, 2006; and was an enterprise as contemplated by O.C.G.A. § 16-14-3(6).

3.

The accused, directly in his capacity as a Georgia Tech employee, and through other Georgia Tech employees and students, developed certain 60 GHz wireless technology to transmit large volumes of data in short amounts of time.

4.

On July 31, 2006, the accused and Sayana entered into a license agreement with the Georgia Tech Research Corporation for the purpose of Sayana, as a private company, further developing the 60 GHz wireless technology.

## The Scheme

5.

The accused engaged in a scheme to acquire and maintain an interest in and control of an enterprise and personal property, including money, by defrauding Georgia Tech.

6.

The accused used his positions at Georgia Tech to steal money from Georgia Tech to benefit himself and Sayana.

7.

The accused used his positions at Georgia Tech to steal Georgia Tech's equipment, computers, computer time, electronics, software, and other things of value to benefit himself and Sayana.

8.

In furtherance of the scheme the accused caused to be ordered multiple "runs" of 60 GHz CMOS microchips ("the chips" or "chips") from Circuits Multi-Projets ("CMP"), a French computer chip fabricator, for use and development by Sayana.

9.

The accused caused CMP to invoice Georgia Tech for Sayana's chips.

10.

The accused caused the CMP invoices to be submitted to Georgia Tech for payment.

11.

The accused directly and through other Georgia Tech employees and students ran Sayana, his private company, at the GEDC, using Georgia Tech's facilities, equipment, personnel, students, and resources to conduct Sayana's day-to-day business activities.

12.

Sayana's business activities included chip design work, testing of the chips, generating test data, analyzing test results, and packaging and shipping chips.

13.

The accused directly and through other Georgia Tech employees and students used Georgia Tech's computers, computer servers, and *Cadence* software to design and test the chips for Sayana.

## The Pattern of Racketeering Activity

14.

The accused engaged in at least two acts of racketeering activity in furtherance of his scheme that had the same and similar intents, results, accomplices, victims, and methods of commission and were interrelated by distinguishing characteristics and are not isolated incidents.

15.

At least one of the acts of racketeering activity occurred in Fulton County, Georgia, and an interest and control of an enterprise and personal property was acquired and maintained in Fulton County, Georgia.

16.

The acts of racketeering activity involve theft by taking in violation of O.C.G.A. § 16-8-2 and constitute racketeering activity pursuant to O.C.G.A. § 16-14-3(9)(A)(ix) as follows:

17.

In or about November 2006, the exact date being unknown to the grand jurors, the accused unlawfully took silicium germanium computer chips, the property of Georgia Tech, with the intention of depriving Georgia Tech of the property. Said computer chips being further described as those computer chips shipped to ETRI, a South Korean company doing business with Sayana.

18.

On or about November 29, 2006, the accused unlawfully took approximately $60,139.70, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_MAY2006

19.

On or about June 12, 2007, the accused unlawfully took approximately $138,119.00, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_SEPT2006.

20.

On or about May 2, 2008, the accused unlawfully took approximately $147,000.00, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_JAN2007.

21.

On or about August 25, 2008, the accused unlawfully took approximately $30,423.00, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_JAN2007.

22.

On or about October 7, 2008, the accused unlawfully took approximately $224,297.00, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_APR2007.

23.

On or about December 5, 2008, the accused unlawfully took approximately $248,238.37, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip runs GT_2_JAN2008, GT_3_JAN2008, and GT_1_JAN2008.

24.

On or about February 18, 2009, the accused unlawfully took approximately $143,050.90, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip runs GT_1_APR2008 and GT_3_APR2008.

25.

On or about March 27, 2009, the accused unlawfully took approximately $48,310.40, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_2_APR2008.

26.

On or about January 6, 2010, the accused unlawfully took approximately $50,000.00, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_JUL2007.

27.

On or about June 24, 2011, the accused unlawfully took approximately $156,136.80, the property of Georgia Tech, with the intention of depriving Georgia Tech of the money. Said money being further described as that money paid by Georgia Tech to CMP for chip run GT_OCT2008.

**The Property**

28.

The property acquired and maintained by the accused, directly and indirectly, includes Sayana, an enterprise; the money paid by Georgia Tech to CMP; and the chips fabricated by CMP.

## Count 2

The Grand Jurors aforesaid further charge and accuse **JOY LASKAR** with the offense of **RACKETEERING** in violation of **O.C.G.A. § 16-14-4(b)** in that the said accused, in the State of Georgia and County of Fulton, on and between June 27, 2006, and June 24, 2011, did then and there unlawfully, while associated with an enterprise, to wit: Sayana Wireless, LLC, conduct and participate in, directly and indirectly, said enterprise through a pattern of racketeering activity, contrary to the laws of said state the good order, peace, and dignity thereof.

Paragraphs 1 through 27 of Count 1 of this indictment, which include the background, the scheme, and the pattern of racketeering activity sections, are incorporated herein by reference as if fully set forth.

**SAM OLENS**
**ATTORNEY GENERAL**