IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOY LASKAR, Ph.D<br><br>Plaintiff,<br>v.<br><br>PHILLIP W. HURD, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br>NO: 1:18-cv-04570-WMR |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter comes before the Court on Defendants' Motion to Dismiss [Doc. 21]. Plaintiff Joy Laskar, Ph.D. ("Dr. Laskar") filed a Complaint in this Court on September 28, 2018, pursuant to 42 U.S.C. §1983 and §1988, alleging malicious prosecution in violation of the Fourth Amendment. Defendants (Jenkins, Garton, Allen, and Hurd) now move to dismiss, claiming that Dr. Laskar cannot establish that he received a favorable termination necessary for a malicious prosecution suit because the criminal charges against him were dismissed based solely on the running of the statute of limitations. In the alternative, Defendants contend that they are entitled to qualified immunity. For the following reasons, this Court **GRANTS** Defendants' Motion to Dismiss [Doc. 21].

## I. BACKGROUND

Prior to the termination of his employment, Dr. Laskar was an electrical engineer at the Georgia Institute of Technology ("Georgia Tech") and became a full

tenured professor in 2002. (Doc. 19, at p. 3 ¶2, and at p. 19 ¶27.) His work focused primarily in the field "mixed signal design technology," wherein he designed and developed signal integration circuits and chips for digital communication systems. (*Id*. at p. 3 ¶2, and at p. 17 ¶20.) Dr. Laskar has obtained over 50 patents in the signal design industry. (*Id*. at p. 21 ¶32.) In 2003, he helped found Georgia Tech's Georgia Electronic Design Center ("GEDC") and served as its first Director. (*Id*. at p. 5 ¶5.) Dr. Laskar also is the founder of Sayana Wireless LLC ("Sayana"), a technology company created in 2006. (*Id*. at p. 9 ¶8, and at p. 22 ¶34.)

After its formation, Sayana granted the Georgia Tech Research Corporation ("GTRC") a 5% member interest in Sayana and also became a member company of GEDC. Sayana paid $90,000 to GEDC to support its membership, as well as additional payments for GEDC research assistants and research expenses. (*Id*. at p. 25 ¶38.) Moreover, Sayana paid patent and licensing fees to GTRC totaling $220,000. (*Id*.) Because of these payments, "Sayana made use of Georgia Tech facilities, research equipment and staff." (*Id*.) It is alleged in the Complaint that this use was authorized and was typical of any company "hosted and affiliated" with GEDC. (*Id*.)

In 2010, Dr. Laskar was notified of a pending Georgia Tech investigation against him and others concerning the use of resources within the GEDC. (*Id*. at p. 27 ¶42.) The President of Georgia Tech notified Dr. Laskar that the Department of

Internal Audit found "substantial evidence of malfeasance . . . including the misappropriation of Institute resources for the benefit of [Sayana]." (*Id.*) Due to these allegations, Dr. Laskar was suspended without pay until the investigation was complete. (*Id.* at p. 27 ¶43.) Dr. Laskar alleges that this suspension violated multiple provisions in the Faculty Handbook and the Board of Regents' Manual, such as those that state the President shall only be allowed to suspend a faculty member after a hearing and dismissal. (*Id.* at p. 27 ¶43, and at p. 28 ¶45, ¶46.) Moreover, representatives of Georgia Tech, including the Defendants, allegedly violated other provisions of the Faculty Handbook when they disseminated information about Dr. Laskar's suspension to the news media. (*Id.* at p. 29-30 ¶47 and¶48.)

The investigation began on January 15, 2010, when Defendant Allen, the Senior Vice Provost for Research and Innovation at Georgia Tech, recommended that an Internal Audit be conducted to "determine whether or not [certain] funds were double-spent[.]" (*Id.* at p. 32 ¶54, and at p. 34 ¶55.) Defendant Allen then began communicating with Dr. Laskar about ways to reduce this large overrun involving Samsung, one of the companies Dr. Laskar had recruited to fund research at GEDC. (*Id.* at p. 35 ¶55.) After several meetings with Defendant Garton, the Associate Vice Provost for Research at the Georgia Institute of Technology, and other Georgia Tech employees, Defendant Hurd, the Chief Audit Executive of Georgia Tech's Department of Internal auditing, decided to "expand his

investigation to conduct an audit of all GEDC finances." (*Id*. at p. 32 ¶54, and at p. 37 ¶55.)

Following this investigation, Defendant Hurd and his team produced an "Official Report of Suspected Malfeasance," declaring that Dr. Laskar had made misrepresentations to the IRS, had misused equipment and resources in order to further the interests of Sayana, and had violated Georgia Tech policy and statutory law. (*Id*. at p. 37 ¶¶56-57.) The State of Georgia Senior Assistant Attorney General, David S. McLaughlin, was notified of the report and, after consideration, concluded that the GBI should pursue a criminal investigation. (*Id*. at p. 38 ¶59, and at p. 39 ¶¶61-62.) Defendant Hurd and GBI Special Agent Lisa Vorrasi sought issuance of an order for the search and seizure of Dr. Laskar's home and two of his automobiles. (*Id*. at p. 40 ¶65.) Dr. Laskar alleges that these searches and seizures were intended to disrupt the sale of Sayana, which resulted in a cancelled auction losing Sayana millions of dollars in sales proceeds. (*Id*. at p. 41 ¶67, and at p. 92 ¶187.)

The affidavit in support of the order for the search and seizure stated, inter alia, that Sayana and Dr. Laskar stole money from Georgia Tech to pay for Sayana's debt through the purchase of certain microchips. (*Id*. at pp. 41-42 ¶67.) The affidavit stated that Dr. Laskar "had stolen 'as much as $700,000 or more.'" However, Dr. Laskins contends that there was no information to support the GBI's finding of "probable cause." (*Id*. at p. 42 ¶67.) To the contrary, Dr. Laskins alleges that the

microchips purchased by Georgia Tech were used by the school and its students, rather than to help pay for debt incurred by Sayana. (*Id.* at p. 42 ¶67.) Furthermore, Dr. Laskar contends that Defendant Hurd had not even attempted to determine whether the chips were being used for the Georgia Tech students that were writing their research dissertations. (*Id.* at p. 67 ¶116.)

In addition, Defendants Jenkins, Hurd, and Garton allegedly testified under oath and misrepresented that Sayana used the Georgia Tech office space without payment and noted that GEDC members only had access to observe, but no ability to use, the resources. (*Id.* at pp. 48-49 ¶¶74-77, and at p. 51 ¶81.) However, Defendant Allen contradicted the testimony by stating that it was possible for GEDC members to use the resources, laboratories, and equipment after a sponsored research agreement was created and that members would be billed for such use, although he was unaware of this being done with any GEDC member company that had used such resources. (*Id.* at p. 51 ¶82.) Also, Defendant Jenkins allegedly testified that he had no evidence that other GEDC member companies that had been using laboratory equipment and resources had contracts in place or were being billed for the use of the equipment and resources. (*Id.* at p. 58 ¶93.)

On December 30, 2014, Dr. Laskar was criminally indicted for "racketeering and theft in connection with the purchase by Georgia Tech of CMP computer prototype chips." (*Id.* at p. 93 ¶189.) The criminal charges were ultimately

dismissed, however, because any alleged criminal acts could have only occurred outside the applicable statute of limitations period. (*Id*. at p. 93 ¶190.) Therefore, Dr. Laskar argues this was a "favorable termination" that sufficiently supports the basis for his §1983 suit for malicious prosecution. (*Id*. at pp. 97-99 ¶197.) In their motion to dismiss, Defendants contend that a dismissal of a prosecution based on the running of the statute of limitations is merely a procedural termination, and, therefore, is not a favorable termination that would "suggest the accused's innocence." (Doc. 21-1 at p. 2.) Defendants also argue that even if the statute of limitations dismissal is considered a favorable termination for a federal malicious prosecution claim, qualified immunity should apply. (*Id*.)

## I. LEGAL STANDARD

A plaintiff will survive a 12(b)(6) motion to dismiss if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018), cert. denied, 139 S. Ct. 807 (2019). However, conclusory allegations are not entitled to the same assumption of truth and must be supported by additional factual allegations. *Ashcroft*, 556 U.S. at 678-679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"); *Ashcroft*, 556 U.S. at 678-679. Moreover, while courts are typically limited to the face of the complaint when considering a motion to dismiss, the court may also take "judicial notice" of certain documents, such as public records and criminal orders, referred to in the complaint that are central to the plaintiff's claim. *Davis v. Williams Communications, Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003); *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## II. DISCUSSION

### A. **<u>Dismissal of Plaintiff's criminal charges because of a running of the statute of limitations does not constitute a favorable termination necessary for his 42 U.S.C. §1983 Malicious Prosecution Claim.</u>**

The Eleventh Circuit has held that alleging malicious prosecution as a violation of the Fourth Amendment is a viable constitutional tort under 42 U.S.C. §1983. *See Uboh v. Reno*, 141 F.3d 1000, 1002-1003 (11th Cir. 1998); *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) ("[A] Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law"). To establish a federal malicious prosecution claim under §1983, however, "a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [the plaintiff's] Fourth Amendment right to be free from

unreasonable seizures." *Kingsland v. Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Specifically, for a malicious prosecution claim, the plaintiff must allege (1) a criminal prosecution was instituted or continued by the defendant(s); (2) maliciously and without any probable cause; (3) terminated in the accused plaintiff's favor; and (4) caused damages to the plaintiff. *Uboh*, 141 F.3d at 1004. In this case, Defendants refer to and ask the court to consider the "Order on Defendant's Plea in Bar," which reveals that the trial court dismissed Dr. Laskar's criminal case based solely on a running of the statute of limitations. (Doc. 21-1 at p. 4.) Defendants contend that the complaint should be dismissed because the dismissal of Dr. Laskar's criminal charges does not satisfy the favorable termination element of his malicious prosecution claim.

Neither the Supreme Court nor the Eleventh Circuit has specifically addressed whether a statute of limitations dismissal is a favorable termination for purposes of a §1983 malicious prosecution claim. However, the Eleventh Circuit has appeared to endorse the widely-accepted requirement that the termination of criminal charges at least reveal an indication of the accused's innocence. *See Stepanovich v. City of Naples*, 728 F. Appx 891, 899 (11th Cir. 2018) (finding that the "Plaintiffs have not "plausibly suggest[ed]" that the prosecution's decision not to pursue the original charges of resisting without violence and disorderly conduct indicated innocence on those charges"); *Uboh*, 141 F.3d at 1005 (finding "nothing in the record to suggest

that the prosecutor's request to withdraw all drug charges . . . amounts to anything less than an indication of innocence").

Many other circuits have straightforwardly required an indication of innocence in order for a plaintiff to establish a favorable termination.[1] For example, the Second Circuit in *Lanning v. City of Glens Falls* explicitly held that "where a dismissal . . . 'leaves the question of guilt or innocence unanswered[,] . . . it cannot provide the favorable termination required as the basis for [that] claim.'" 908 F.3d 19, 28-29 (2d. Cir. 2018) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367-368 (2d Cir. 1992)). Therefore, the plaintiff's malicious prosecution claim was not viable because the mere allegation that the criminal charges were dismissed failed to show "that the criminal proceedings against him were terminated in a manner indicating his innocence." *Lanning* , 908 F.3d at 28; *see also Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (Adopting the Second Circuit's holding and reasoning that "proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty"). The Third Circuit also requires that a

[1] The Supreme Court has also alluded to the indication of innocence requirement when addressing the policies underlying the favorable termination element. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (noting that the requirement of favorable termination "avoids parallel litigation over the issues of probable cause and *guilt*") (emphasis added). Because the Supreme Court included "guilt" in its policy rationale, it suggests that the disposition of the criminal prosecution should have some indication of innocence in order to satisfy the favorable termination element of a malicious prosecution claim.

favorable termination indicate the defendant's innocence. *See, e.g.*, *Poku v. Himelman*, 448 F. App'x 217, 220 (3d Cir. 2011) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d. Cir. 2009)) ("[A] plaintiff . . . fail[s] to establish that the proceeding ended in his favor '[w]hen the circumstances . . . indicate that the judgment as a whole does not reflect the plaintiff's innocence'"). Additionally, in *Logan v. Caterpillar, Inc.*, the Seventh Circuit held that the plaintiff did not meet his "burden to show that the witness harassment charge was dismissed for reasons consistent with his innocence simply by proclaiming his innocence." 246 F.3d 912, 926 (7th Cir. 2001). Similarly, the Ninth Circuit has also adopted the indication of innocence requirement. *See, e.g.*, *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) (declaring that "[a]n individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence").

Among the circuits that have adopted the indication of innocence requirement, some have also applied it to conclude that a dismissal based on technical or procedural grounds is not a favorable termination. The Tenth Circuit has held that a dismissal "that 'does not touch the merits . . . leaves the accused without a favorable termination.'" *Cordova v. City of Albuquerque*, 816 F.3d 645, 651 (10th Cir. 2016). In the *Cordova* case, the plaintiff "ask[ed] [the court] to set aside [its] indicative-of-innocence standard and find that speedy trial dismissals are *per se* favorable." *Id.*

However, the Court rejected this approach and held that this case was an example of a dismissal "attributable to technical or procedural errors that do[es] not reflect the merits" and, therefore, is not a favorable termination. *Id*. at 652. The California Supreme Court in *Lackner v. LaCroix* also specifically held that a dismissal of a criminal action based on a statute of limitations defense is technical or procedural as distinguished from a substantive termination and does not reflect on the merits of the underlying action. 25 Cal. 3d 747, 751-752 (1979). Therefore, the dismissal did not allow the plaintiff to maintain a cause of action for malicious prosecution. *See id*.

Further, although the Eleventh Circuit has not yet addressed whether a statute of limitations dismissal is a favorable termination for purposes of a malicious prosecution claim, the Court has determined that a "bona fide termination" in a garnishment proceeding must be "on the merits instead of for a procedural reason." *Barniv v. BankTrust*, 579 F. App'x 719, 721 (11th Cir. 2014). Under Florida law, a wrongful garnishment claim has the same elements as a malicious prosecution claim. *See id*. Therefore, since the Eleventh Circuit has indicated that procedural dismissals are not bona fide favorable terminations in this context, it likely follows that a procedural dismissal based on the statute of limitations would also be insufficient for a favorable termination in a malicious prosecution claim.

Dr. Laskar argues, on the other hand, that the Eleventh Circuit has explicitly considered this issue in *Uboh v. Reno*, where it noted that some "courts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, [or] a dismissal based on the running of the statute of limitations". 141 F.3d at 1005 (11th Cir. 1998). However, in that case, the court was not presented with the facts of a dismissal based on the statute of limitations and, therefore, was not ultimately stating that it adopted this view. Instead, the Court was merely referencing, as dicta, the decisions of other jurisdictions.

Moreover, Dr. Laskar contends that the Northern District of Georgia has concluded that "the issue in a malicious prosecution case is not the plaintiff's guilt or innocence." *Harris v. Wal-Mart Stores East, LP*, No. 1:11-CV-03406-CC, 2013 WL 6795973, at *6 (N.D. Ga. Dec. 23, 2013). Yet, even assuming this to be true, this case is distinguishable from *Harris*, where the dismissal was not based on procedural grounds. In *Harris*, the plaintiff presented the court with the district attorney's Request to Dismiss Warrants, which stated that "[w]ithout any evidence other than the defendant's statement, the State does not believe it can prove this case beyond a reasonable doubt." *Id*. at *7. The State's basis for the dismissal, therefore, expressly concerned the merits of the case; without enough evidence, the criminal defendant could never be convicted. It would be only logical then to consider this a

favorable termination, as opposed to a termination on procedural grounds where the merits of the case are not reflected.

In conclusion, the Eleventh Circuit's adherence to the indication of innocence requirement compels this Court to hold that the dismissal of Dr. Laskar's criminal case based on the running of the statute of limitations is not a favorable termination. Dr. Laskar's criminal order clearly reveals that the dismissal of his charges was based on a statute of limitations defense. Since a court may consider this evidence in addition to the factual allegations pled in the complaint, this Court holds that the statute of limitations defense terminated the criminal charges before the merits could be addressed. A mere procedural dismissal that does not reflect the merits of the case cannot indicate Dr. Laskar's innocence. Therefore, Dr. Laskar is unable to satisfy the favorable termination element of his malicious prosecution claim.

Notwithstanding this determination, however, there are also policy reasons suggesting that a dismissal based on procedural grounds should be considered a favorable termination. From a common-sense perspective, there is no doubt that a dismissal of criminal charges, whether for procedural or substantive reasons, is favorable to the defendant. When a case gets dismissed because the statute of limitations has run, the criminal charges against the defendant can no longer be pursued, as opposed to, for example, a civil case that is dismissed without prejudice. Therefore, the statute of limitations dismissal certainly seems to favor the accused

and, since the defendant is not "convicted," the determination also respects the Supreme Court's policy that convicted defendants should not be able to collaterally attack their convictions using a civil suit.[2]

Moreover, holding that a statute of limitations dismissal is not a favorable termination could potentially yield inequitable results. For example, in this case, there is no dispute that the running of the statute of limitations was the reason that Dr. Laskar's criminal case was dismissed. Yet, it is conceivable that a jury in a different criminal case could return a general verdict in favor of the defendant without having to indicate whether its decision was based on the statute of limitations defense or on the merits. *See, e.g.*, *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 842 (S.D. Miss. 2011) (noting that "[t]he jury in the trial . . . against Willie Harried resulted in a favorable verdict for Harried; but that verdict was a general verdict and thus there is no way to determine whether the jury found in Harried's favor on the merits, or on Harried's statute of limitations defense."). If a statute of limitations dismissal is not a favorable termination, then a criminal defendant whose case gets dismissed for that reason cannot maintain a §1983 malicious prosecution suit, whereas a dismissal under the guise of a "general

[2] *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (declining to "expand opportunities for collateral attack" by preventing a convicted defendant from challenging the criminal conviction "through the vehicle of a civil suit.").

verdict" may allow a defendant to proceed with a civil suit solely because of the jury's non-specific basis for its decision.[3]

Despite these arguments to the contrary, Eleventh Circuit precedent and that of other persuasive jurisdictions suggests that a termination based on a statute of limitations dismissal is insufficient to indicate the innocence of Dr. Laskar. Therefore, since he is unable to satisfy a necessary element of his §1983 malicious prosecution claim, the case should be dismissed.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 21]. Because the motion is granted for Plaintiff's failure to establish the favorable termination element of his §1983 claim, the Court need not address the issue of qualified immunity.

**IT IS SO ORDERED** this 2nd day of April, 2019.

WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia

---

[3] Additionally, although unlikely, prosecutors could potentially use the determination as a strategic maneuver to freely engage in the malicious prosecution of a plaintiff, file the criminal case outside of the statute of limitations period, and, consequently, shield themselves from civil liability, knowing that the favorable, bona-fide termination element will not be satisfied by this type of dismissal.